UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

KETURAH MIXON,

    Plaintiff,

v

BRONSON HEALTH CARE GROUP, INC., a Michigan corporation, BRONSON METHODIST HOSPITAL, a Michigan corporation Individually, and doing business as South-Western Michigan Trauma and Emergency Center of Bronson and Express Care, and SOUTHWESTERN MICHIGAN EMERGENCY SERVICE, P.C., a Michigan Professional Corporation,

    Defendants.

CASE NO. 1:14-CV-330

HON. PAUL L. MALONEY

**DEFENDANTS' ANSWER TO COMPLAINT, RELIANCE UPON JURY DEMAND, AND AFFIRMATIVE DEFENSES**

---

| | |
|---|---|
| Keturah Mixon<br>In Pro Per<br>243 Devon Road<br>Battle Creek, MI 49015<br>(269) 589-6469 | Carol D. Carlson (P41345)<br>Stacy M. Kramer (P77091)<br>SMITH HAUGHEY RICE & ROEGGE<br>Attorneys for Defendants Bronson Health Care Group, Inc. and Bronson Methodist Hospital<br>100 Monroe Center NW<br>Grand Rapids, MI 49503-2802<br>(616) 774-8000<br>ccarlson@shrr.com<br>skramer@shrr.com |

---

### DEFENDANTS' ANSWER TO COMPLAINT

Defendants, Bronson Health Care Group, Inc. and Bronson Methodist Hospital, through their attorneys, Smith Haughey Rice & Roegge, answer Plaintiff's Complaint as follows:

### Jurisdiction

1. This court has jurisdiction under 28 U.S.C. 1331. Federal question jurisdiction arises pursuant to 42 U.S.C. 1395dd, and 42 C.F.R. 489.24.

**ANSWER:** Defendants neither admit nor deny the allegations in Paragraph 1 of Plaintiff's Complaint, as the allegations are jurisdictional in nature and require no answer.

### Venue

2.   Venue is proper pursuant to 28 U.S.C. 1391 because the defendants are subject to personal jurisdiction in this district, and the events given rise to the claims alleged herein took place in this district.

**ANSWER:   Defendants neither admit nor deny the allegations in Paragraph 2 of Plaintiff's Complaint, as the allegations are jurisdictional in nature and require no answer.**

### Parties

3.   Plaintiff: Keturah Mixon resides at 243 Devon Road Battle Creek Mi. 49015

**ANSWER:   Defendants neither admit nor deny the allegations in Paragraph 3 of Plaintiff's Complaint, as Defendants lack knowledge or information sufficient to form a belief as to the truth thereof, and Plaintiff is left to her proofs.**

4.   Defendant: Bronson Methodist Hospital is located at 601 John St. Kalamazoo Mi 49007

**ANSWER:   Admitted.**

### STATEMENT OF FACTS

5.   On April 1, 2012, I was a patient at Bronson Methodist Hospital when I delivered my 22wk old son, Amir Antonio Mixon. When my son was delivered, I repeatedly asked The [*sic*] Doctor Scott M. Peterson to provide my son with a medical screening exam, and to do everything in his power to stabilize my son's, known emergency medical conditions.  Dr. Peterson repeatedly refused to provide my son with a medical screening examination and Dr. Peterson also repeatedly refused to stabilize my son's known emergency medical conditions.   My son was born alive, he had a heartbeat for 37 minutes, and Dr. Peterson did not do anything at all to save my son's life.  Instead, he watched my son die in my arms, 37 minutes after he was born.  When my son was born, he was considered an individual who had entered the hospital, and I requested a medical examination and stabilization treatment for him, and resuscitation efforts on his behalf, in which I was denied.  After my son died, I asked Dr. Scott M. Peterson to resuscitate my son, but he refused.  Dr. Peterson and the rest of the staff at Bronson Methodist Hospital was obligated under the Emergency Medical Treatment and active [*sic*] Labor act [*sic*], 42 U.S.C.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

1395dd and 42 C.F.R. 489.24(EMTALTA), and The Born Alive Infant Protection Act (BAIPA) to provide my son with a medical screening examination that was within the capabilities of the hospital, and to stabilize( The definition of stabilize according to EMTALA is to provide such medical treatment of the condition necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility) all of my son's known emergency medical conditions. Dr. Peterson, and the staff at Bronson Methodist Hospital, violated the Emergency Medical Treatment and Active Labor Act, and The Born Alive Infant Protection Act, when they refused to provide my son with a medical screening examination that is compliant with EMTALA and BAIPA, and when they refused to stabilize my son's known emergency medical conditions in a way that is compliant with EMTALA, and BAIPA. Under EMTALA, when someone presents to any area of a hospital that has entered into a Medicare provider agreement, and asks for the person to be provided with a medical screening examination, and to provide stabilization of the person's known emergency medical conditions, the staff at the hospital are obligated under EMTALA and BAIPA(in this instance) to provide a medical screening examination that is within the capabilities of the hospital and in compliance with EMTALA and BAIPA, and to stabilize the person's known emergency medical conditions. If the staff at the hospital refuses to provide such requested treatment, EMTAL A [*sic*] provides that Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate. I have, and am suffering personal harm as a direct result of Bronson Methodist Hospital's violations of EMTALA(Medical Screening Examination and Stabilization) and BAIPA when they refused to provide my Newborn [*sic*] infant son Amir Antonio Mixon with a medical screening examination and their refusal to stabilize my son's known emergency medical conditions. The personal harm that I have and am suffering as a direct result of Bronson Methodist Hospital's EMTALA and BAIPA violations are as follows: I had to endure

and watch my son Amir Antonio Mixon grasp [*sic*] for air as he was dying in my arms, all while pleading with Dr. Peterson to save his life. I am no longer able to carry a child, so that was my last chance to have a baby, and to have a son, so I am tortured daily with this reality.  Loss of companionship, severe depression, I grieve and suffer emotionally daily due to this violation, mental anguish, severe sadness, my occupation Is [*sic*] being a stay-at-home mother and I have not been able to successfully perform my duties due to this violation.

**ANSWER:**     **Paragraph 5 of Plaintiff's Complaint violates Rule 10 of the Federal Rules of Civil Procedure governing the form of pleadings and should therefore be stricken.  Subject to and without waiving the objection, Defendants admit that Plaintiff was a patient at Bronson Methodist Hospital on April 1, 2012 and delivered a live, male infant on that date, who eventually died.  Defendants deny as untrue any allegation in Paragraph 5 that Defendants violated EMTALA, 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and/or BAIPA, 1 U.S.C. § 8.  Defendants neither admit nor deny the remaining factual allegations in Paragraph 5, as Defendants lack knowledge or information sufficient to form a belief as to the truth thereof, and Plaintiff is left to her proofs.**

6.    The defendant hospital did not within its available staff, and facilities, provide my son, known to be suffering from multiple emergency medical conditions with the medical treatment necessary to assure within the reasonable medical probability that no deterioration of the condition would likely occur, all in violation of EMTALA 42 U.S.C. 1395dd and 42 C.F.R. 489.24, and BAIPA.  Defendant hospital knew that my son would die without their intervention, and was dying, and they refused to attempt to save his life.

**ANSWER:**     **Defendants deny as untrue any allegation in Paragraph 6 of Plaintiff's Complaint that Defendants violated EMTALA, 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and/or BAIPA, 1 U.S.C. § 8.  Defendants neither admit nor deny the remaining factual allegations in Paragraph 6, as Defendants lack knowledge or information sufficient to form a belief as to the truth thereof, and Plaintiff is left to her proofs.**

7. **Claim I.**

**ANSWER:**     **Paragraph 7 of Plaintiff's Complaint violates Rule 10 of the Federal Rules of Civil Procedure governing the form of pleadings and should therefore be stricken.  Subject to and without waiving the objection, Paragraph 7 of Plaintiff's Complaint sets forth no allegations requiring an answer.  To the extent an answer is required, Defendants deny as untrue any inference in Paragraph 7 that Defendants violated EMTALA, 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and/or BAIPA, 1 U.S.C. § 8.**

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

8. The defendants did not provide my son Amir Antonio Mixon with a Medical Screening examination that is in compliance with EMTALA and BAIPA that I requested them to do on my son's behalf.

**ANSWER:** **Defendants deny as untrue any allegation in Paragraph 8 of Plaintiff's Complaint that Defendants violated EMTALA, 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and/or BAIPA, 1 U.S.C. § 8. Defendants neither admit nor deny the remaining factual allegations in Paragraph 8, as Defendants lack knowledge or information sufficient to form a belief as to the truth thereof, and Plaintiff is left to her proofs.**

9. The Defendant Violated Federal Statute Emergency Medical Treatment and Active Labor Act 42 U.S.C. 1395 dd (a), and 42 C.F.R. 489.24, and The Born Alive Infant Protection Act by not providing my son a medical screening examination that is compliant with EMTALA. 42 U.S. Code § 1395dd - Examination and treatment for emergency medical conditions and women in labor Provides for the following(In Pertinent Part): **(a) Medical screening requirement** In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

**(b) Necessary stabilizing treatment for emergency medical conditions and labor**

**(1) In general**

If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—

**(A)** within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

**(B)** For transfer of the individual to another medical facility in accordance with subsection (c) of this section. **(e) Definitions**

In this section:

**(1)** The term "emergency medical condition" means-

**(A)** A medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—

**(i)** placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,

**(ii)** serious impairment to bodily functions, or

**(iii)** serious dysfunction of any bodily organ or part; or

**(B)** with respect to a pregnant woman who is having contractions—

**(i)** that there is inadequate time to effect a safe transfer to another hospital before delivery, or

**(ii)** that transfer may pose a threat to the health or safety of the woman or the unborn child,

**(2)** The term "participating hospital" means a hospital that has entered into a provider agreement under section 1395cc of this title.

**(3)**

**(A)** The term "to stabilize" means, with respect to an emergency medical condition described in paragraph (1)(A), to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility, or, with respect to an emergency medical condition described in paragraph (1)(B), to deliver (including the placenta).

**(B)** The term "stabilized" means, with respect to an emergency medical condition described in paragraph (1)(A), that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility, or, with respect to an emergency

medical condition described in paragraph (1)(B), that the woman has delivered (including the placenta).

**(2) Civil enforcement**

**(A) Personal harm**

Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

**<u>ANSWER</u>:** Defendants deny as untrue any allegation in Paragraph 9 of Plaintiff's Complaint that Defendants violated EMTALA, 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and/or BAIPA, 1 U.S.C. § 8. The remaining allegations in Paragraph 9 are conclusions of law and require no answer. To the extent an answer is required, 42 U.S.C. § 1395dd speaks for itself.

10. 42 CFR 489.24 - SPECIAL RESPONSIBILITIES OF MEDICARE HOSPITALS IN EMERGENCY CASES provides (In pertinent part): § 489.24 Special responsibilities of <u>Medicare</u> hospitals in emergency cases.

*(a) Applicability of provisions of this section.*

**(1)** In the case of a hospital that has an emergency department, if an individual (whether or not eligible for Medicare benefits and regardless of ability to pay) "comes to the emergency department", as defined in paragraph (b) of this section, the hospital must—

**(i)** Provide an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition exists. The examination must be conducted by an individual(s) who is determined qualified by hospital bylaws or rules and regulations and who meets the requirements of § <u>482.55</u> of this chapter concerning emergency services personnel and direction; and

**(ii)** If an emergency medical condition is determined to exist, provide any necessary stabilizing treatment, as defined in paragraph (d) of this section, or an appropriate transfer as defined in paragraph

(e) of this section. If the hospital admits the individual as an inpatient for further treatment, the hospital's obligation under this section ends, as specified in paragraph (d)(2) of this section. **(b)** *Definitions.* As used in this subpart—

*Capacity* means the ability of the hospital to accommodate the individual requesting examination or treatment of the transferred individual. Capacity encompasses such things as numbers and availability of qualified staff, beds and equipment and the hospital's past practices of accommodating additional patients in excess of its occupancy limits.

*Comes to the emergency department* means, with respect to an individual who is not a patient (as defined in this section), the individual—

**(1)** Has presented at a hospital's dedicated emergency department, as defined in this section, and requests examination or treatment for a medical condition, or has such a request made on his or her behalf. In the absence of such a request by or on behalf of the individual, a request on behalf of the individual will be considered to exist if a prudent layperson observer would believe, based on the individual's appearance or behavior, that the individual needs examination or treatment for a medical condition;

**(2)** Has presented on hospital property, as defined in this section, other than the dedicated emergency department, and requests examination or treatment for what may be an emergency medical condition, or has such a request made on his or her behalf. In the absence of such a request by or on behalf of the individual, a request on behalf of the individual will be considered to exist if a prudent layperson observer would believe, based on the individual's appearance or behavior, that the individual needs emergency examination or treatment; the individual is considered to have come to the emergency department. *Dedicated emergency department* means any department or facility of the hospital, regardless of whether it is located on or off the main hospital campus, that meets at least one of the following requirements:

**(1)** It is licensed by the State in which it is located under applicable State law as an emergency room or emergency department;

**(2)** It is held out to the public (by name, posted signs, advertising, or other means) as a place that provides care for emergency medical conditions on an urgent basis without requiring a previously scheduled appointment; or

**(3)** During the calendar year immediately preceding the calendar year in which a determination under this section is being made, based on a representative sample of patient visits that occurred during that calendar year, it provides at least one-third of all of its outpatient visits for the treatment of emergency medical conditions on an urgent basis without requiring a previously scheduled appointment.

*Emergency medical condition* means—

**(1)** A medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain, psychiatric disturbances and/or symptoms of substance abuse) such that the absence of immediate medical attention could reasonably be expected to result in—

**(i)** Placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy;

**(ii)** Serious impairment to bodily functions; or

**(iii)** Serious dysfunction of any bodily organ or part; or

**(2)** With respect to a pregnant woman who is having contractions—

**(i)** That there is inadequate time to effect a safe transfer to another hospital before delivery; or

**(ii)** That transfer may pose a threat to the health or safety of the woman or the unborn child. *Hospital* includes a critical access hospital as defined in section 1861(mm)(1) of the Act.

*Hospital property* means the entire main hospital campus as defined in § 413.65(b) of this chapter, including the parking lot, sidewalk, and driveway, but excluding other areas or structures of the hospital's main building that are not part of the hospital, such as physician offices, rural health centers, skilled nursing facilities, or other entities that participate separately under Medicare, or restaurants, shops, or other nonmedical facilities.

*Hospital with an emergency department* means a hospital with a dedicated emergency department as defined in this paragraph (b).

*Inpatient* means an individual who is admitted to a hospital for bed occupancy for purposes of receiving inpatient hospital services as described in § 409.10(a) of this chapter with the expectation that he or she will remain at least overnight and occupy a bed even though the situation later develops that the individual can be discharged or transferred to another hospital and does not actually use a hospital bed overnight.  *Participating hospital* means (1) a hospital or (2) a critical access hospital as defined in section 1861(mm)(1) of the Act that has entered into a Medicare provider agreement under section 1866 of the Act.

*Patient* means—

**(1)** An individual who has begun to receive outpatient services as part of an encounter, as defined in § 410.2 of this chapter, other than an encounter that the hospital is obligated by this section to provide;

**(2)** An individual who has been admitted as an inpatient, as defined in this section.

*Stabilized* means, with respect to an "emergency medical condition" as defined in this section under paragraph (1) of that definition, that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility or, with respect to an "emergency medical condition" as defined in this section under paragraph (2) of that definition, that the woman has delivered the child and the placenta.

*To stabilize* means, with respect to an "emergency medical condition" as defined in this section under paragraph (1) of that definition, to provide such medical treatment of the condition necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility or that, with respect to an "emergency medical condition" as defined in this section under paragraph (2) of that definition, the woman has delivered the child and the placenta. **(d)** ***Necessary stabilizing treatment for emergency medical conditions—***

**(1) *General.*** Subject to the provisions of paragraph (d)(2) of this section, if any individual (whether or not eligible for Medicare benefits) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—

**(i)** Within the capabilities of the staff and facilities available at the hospital, for further medical examination and treatment as required to stabilize the medical condition.

**(ii)** For transfer of the individual to another medical facility in accordance with paragraph (e) of this section.

**ANSWER:** Defendants deny as untrue any allegation or inference in Paragraph 10 of Plaintiff's Complaint that Defendants violated EMTALA, 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and/or BAIPA, 1 U.S.C. § 8. The remaining allegations in Paragraph 10 are conclusions of law and require no answer. To the extent an answer is required, 42 C.F.R. § 489.24 speaks for itself.

11.  The Born-Alive Infants Protection Act of 2002 Interaction of the Emergency Medical Treatment and Labor Act (EMTALA) provides for the following(In Pertinent Part): With the definition of the terms "person" and "individual" codified at 1 U.S.C. § 8, it is clear that there may be some circumstances where EMTALA protections can attach to an infant who is born alive, as that term is defined in 1 U.S.C. § 8(b). For example, assume that a hospital's labor and delivery department meets the definition of a "dedicated emergency department" under the new regulations. If an infant were born alive (again, as that term is defined in 1 U.S.C. § 8(b)) in that dedicated emergency department, and a request were made on that infant's behalf for screening for a medical condition, (or if a prudent layperson would conclude, based on the infant's appearance or behavior, that the infant needed examination or treatment for an emergency medical condition and that a request would have been made for screening) the hospital and physician could be liable for violating EMTALA for failure to provide such a screening examination. This follows because the born-alive infant is a "person" and an "individual" under 1 U.S.C. § 8(a), and the screening requirement of EMTALA applies to "any individual" who comes to the emergency department. Another example could occur were an infant to be born alive elsewhere on the hospital's campus (i.e., not in the hospital's dedicated emergency department) and a prudent layperson observer

concluded, based on the born-alive infant's appearance or behavior, that the born-alive infant were suffering from an emergency medical condition.  In such a circumstance, the hospital and its medical staff would be required to perform a medical screening examination on that bornalive [*sic*] infant to determine whether or not an emergency medical condition existed. If the hospital or its medical staff determined that the born-alive infant were suffering from an emergency medical condition, there would then arise an obligation to admit the infant, or to comply with either the stabilization requirement or the transfer requirement, or risk a finding of an EMTALA violation.  This follows because the born-alive infant is a "person" and an "individual," as described above, and the stabilization and transfer requirements of EMTALA apply to "any individual" who comes to the hospital.  Finally, a third example could occur if the hospital were to admit a born-alive infant.  As noted above, EMTALA does not apply to inpatients. Were an infant born alive and then admitted to the hospital, EMTALA would not apply to protect the infant in most circumstances.  However, the CoPs described above clearly would apply to the infant once he or she was admitted to the hospital as an inpatient.  If a hospital were to violate those CoPs, it would put at risk its Medicare provider agreement.

**ANSWER:** **Paragraph 11 of Plaintiff's Complaint violates Rule 10 of the Federal Rules of Civil Procedure governing the form of pleadings and should therefore be stricken.  Subject to and without waiving the objection, Defendants deny as untrue any allegation or inference in Paragraph 11 that Defendants violated EMTALA, 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and/or BAIPA, 1 U.S.C. § 8.  The remaining allegations in Paragraph 11 are conclusions of law and require no answer.  To the extent an answer is required, Defendants neither admit nor deny the allegations in Paragraph 11, as Defendants lack knowledge or information sufficient to form a belief as to the truth thereof, and Plaintiff is left to her proofs.**

12.  Plaintiff realleges paragraphs 1 through 11.

**ANSWER:** **Defendants hereby incorporate by reference their answers to Paragraphs 1–11 of Plaintiff's Complaint, as if stated in full herein.**

13.  Defendant hospital is a participating hospital with Medicare with a dedicated emergency department, and they violated EMTALA, and BAIPA.

**ANSWER:** **Defendants admit that Bronson Methodist Hospital is a participating hospital with Medicare with a dedicated emergency department.  Defendants deny as untrue any**

allegation in Paragraph 13 of Plaintiff's Complaint that Defendants violated EMTALA, 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and/or BAIPA, 1 U.S.C. § 8.

14. By doing the acts as described above, Defendant caused the plaintiff direct and personal harm, and or permitted the violation of Plaintiff's rights under the Federal statute EMTALA, 42 U.S.C. 1395dd, and 42 C.F.R. 489.24, and BAIPA thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. 1395dd, and 42 C.F.R, 489.24.

**ANSWER:** Defendants deny as untrue the allegations in Paragraph 14 of Plaintiff's Complaint that Defendants violated EMTALA, 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and/or BAIPA, 1 U.S.C. § 8. Defendants further deny as untrue that Plaintiff has standing to bring this Complaint alleging violations of EMTALA and/or BAIPA; that she has a valid claim under EMTALA or BAIPA; or that she is entitled to any damages in this case.

### Claim II

15. Plaintiff realleges paragraphs 1 through 17 [*sic*].

**ANSWER:** Defendants hereby incorporate by reference their answers to Paragraphs 1–14 of Plaintiff's Complaint, as if stated in full herein.

16. The Defendant Hospital violated Federal Statute Emergency Medical Treatment and Active Labor Act 42 U.S.C. 1395dd(b), and 42 C.F.R. 489.24 and BAIPA, when they did not stabilize my son Amir Antonio Mixon's known emergency medical conditions, when I requested them to provide that necessary treatment on his behalf, to save his life, and when they did not resuscitate him after he passed away upon my request.

**ANSWER:** Defendants deny as untrue any allegation in Paragraph 16 of Plaintiff's Complaint that Defendants violated EMTALA, 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and/or BAIPA, 1 U.S.C. § 8. Defendants neither admit nor deny the remaining factual allegations in Paragraph 16, as Defendants lack knowledge or information sufficient to form a belief as to the truth thereof, and Plaintiff is left to her proofs.

17. The Defendant Hospital's direct violations of EMTALA and BAIPA have caused personal harm, and or permitted the violation of plaintiff's rights under EMTALA and BAIPA, and the law provides that due to this violation I may recover the damages available under personal injury in the state of Michigan, with no maximum on the liability.

**ANSWER:** Defendants deny as untrue the allegations in Paragraph 17 of Plaintiff's Complaint that Defendants violated EMTALA, 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and/or BAIPA, 1 U.S.C. § 8. Defendants further deny as untrue that Plaintiff has standing to bring this Complaint alleging violations of EMTALA or BAIPA; that she has a valid claim under EMTALA or BAIPA; that she is entitled to any damages in this case; or that damages are unlimited. Defendants neither admit nor deny the remaining allegations in Paragraph 17, as they are conclusions of law and require no answer.

### Request For Relief

18. Section 42 U.S.C. 1395 dd (d)(2)(a) states the following: Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate, with no maximum on the liability. I am allowed to bring this cause of action in Federal or State Court.

**ANSWER:** Defendants deny as untrue any allegation or inference in Paragraph 18 of Plaintiff's Complaint that Defendants violated EMTALA, 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and/or BAIPA, 1 U.S.C. § 8. Defendants further deny as untrue that Plaintiff has standing to bring this Complaint alleging violations of EMTALA or BAIPA; that she has a valid claim under EMTALA or BAIPA; that she is entitled to any damages in this case; or that damages are unlimited. The remaining allegations in Paragraph 18 are conclusions of law and require no answer. To the extent an answer is required, 42 U.S.C. § 1395dd speaks for itself.

19. The personal harm that I have suffered, and am currently suffering, as a direct result of the Defendant hospitals multiple violations under my Federal EMTALA rights, are as follows: I had to endure and watch my son Amir Antonio Mixon grasp [*sic*] for air as he was dying in my arms, all while pleading with Dr. Peterson to save his life. I am no longer able to carry a child, so that was my last chance to have a baby, and to have a son, so I am tortured daily with this reality. Loss of companionship, severe depression, I grieve and suffer emotionally daily due to this violation, mental anguish, severe sadness, my occupation Is [*sic*] being a stay-at-home mother and I have not been able to successfully perform my duties due to this violation, severe emotional distress, pain and suffering past present and future, fright, horror, grief, shame, humiliation, anger and worry.

**ANSWER:** Defendants deny as untrue any allegation in Paragraph 19 of Plaintiff's Complaint that Defendants violated EMTALA, 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and/or BAIPA, 1 U.S.C. § 8.  Defendants further deny as untrue that Plaintiff has standing to bring this Complaint alleging violations of EMTALA or BAIPA; that she has a valid claim under EMTALA or BAIPA; or that she is entitled to any damages in this case.  Defendants neither admit nor deny the remaining factual allegations in Paragraph 19, as Defendants lack knowledge or information sufficient to form a belief as to the truth thereof, and Plaintiff is left to her proofs.

20.   WHEREFORE, the Plaintiff requests:

**ANSWER:** Paragraph 20 of Plaintiff's Complaint violates Rule 10 of the Federal Rules of Civil Procedure governing the form of pleadings and should therefore be stricken.  Subject to and without waiving the objection, Defendants are unable to respond to Paragraph 20 as it is nonsensical.

21.   Compensatory damages, including general and special, economic and non-economic damages in the amount of $6,000,000 per claim.

**ANSWER:** Defendants deny as untrue that Plaintiff is entitled to any damages in this case.

22.   Any further relief which the court may deem appropriate.

**ANSWER:** Defendants deny as untrue that Plaintiff is entitled to any relief or damages in this case.

23.   That all damage award amounts are subject to Michigan's Personal Injury Law, and not Michigan's Medical Malpractice law, as this is not a claim under medical malpractice.

**ANSWER:** The allegations in Paragraph 23 of Plaintiff's Complaint are conclusions of law and require no answer.  To the extent an answer is required, Defendants deny as untrue the allegations of Paragraph 23.

24.   Mandatory Emergency Medical Treatment and Active Labor and Born Alive Infant Protection Act training for all members of staff at Defendant Hospital.

**ANSWER:** Defendants deny as untrue that Plaintiff is entitled to any damages in this case.

### Demand For Jury Trial

25.   Plaintiff hereby requests a trial by jury of no less than 12 persons, on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

**ANSWER:** The allegations in Paragraph 25 of Plaintiff's Complaint are conclusions of law and require no answer.


DATED: April 18, 2014	/s/ Stacy M. Kramer
	Carol D. Carlson (P41345)
	Stacy M. Kramer (P77091)
	SMITH HAUGHEY RICE & ROEGGE
	Attorneys for Defendants Bronson Health Care
	Group, Inc. and Bronson Methodist Hospital
	100 Monroe Center NW
	Grand Rapids, MI  49503-2802
	(616) 774-8000


## RELIANCE UPON JURY DEMAND

Defendants, Bronson Health Care Group, Inc. and Bronson Methodist Hospital, through their attorneys, Smith Haughey Rice & Roegge, hereby rely upon the Jury Demand previously filed by Plaintiff in this matter, and reserve the right to assert their own Demand should that made by Plaintiff be waived or otherwise lost to her.


DATED: April 18, 2014	/s/ Stacy M. Kramer
	Carol D. Carlson (P41345)
	Stacy M. Kramer (P77091)
	SMITH HAUGHEY RICE & ROEGGE
	Attorneys for Defendants Bronson Health Care
	Group, Inc. and Bronson Methodist Hospital
	100 Monroe Center NW
	Grand Rapids, MI  49503-2802
	(616) 774-8000

**AFFIRMATIVE DEFENSES**

Defendants, Bronson Health Care Group, Inc. and Bronson Methodist Hospital, through their attorneys, Smith Haughey Rice & Roegge, may rely on the following Affirmative Defenses, some of which will depend on facts obtained during discovery:

1. Plaintiff's claim is barred or otherwise fails to state a claim upon which relief may be granted.

2. Except as to the amount of damages, there is no genuine issue as to any material fact, and these Defendants are entitled to judgment or partial judgment as a matter of law.

3. This Court lacks subject matter jurisdiction and/or personal jurisdiction.

4. Plaintiff lacks standing to bring claims alleging violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24, and the Born-Alive Infants Protection Act ("BAIPA), 1 U.S.C. § 8, and her claims should therefore be dismissed.

5. Defendants' alleged treatment of Plaintiff and her infant son born on April 1, 2012 complied with the requirements set forth in EMTALA and BAIPA or, in the alternative, is not subject to EMTALA and/or BAIPA.

6. Plaintiff's claims alleging violations of EMTALA and BAIPA sound in medical malpractice and, therefore, are barred or otherwise fail to state a claim upon which relief may be granted based on Plaintiff's failure to comply with the provisions of the Michigan Malpractice Reform Legislation of 1993. These failures include, but are not limited to, Plaintiff's failure to comply with the requirements of MCL 600.2912(b) and 2912(d).

7. Plaintiff has failed, in whole or in part, to state a cause of action against these Defendants upon which relief can be granted.

8. Plaintiff's Complaint violates Rule 10 of the Federal Rules of Civil Procedure governing the form of pleadings and should therefore be stricken. Plaintiff's failure to comply with Rule 10 has prejudiced Defendants' ability to provide definitive responses to the Complaint.

9. Plaintiff's Complaint fails to state a cause of action against these Defendants because the Complaint is vague and unspecific with respect to these Defendants, failing to give adequate notice of what these Defendants are called upon to defend.

10. The limitation of non-economic damages specified in MCL 600.1483 is or may become applicable to this matter, and it is the Court's obligation under MCL 600.6098 to apply this limitation to any verdict for Plaintiff rendered in this matter.

11. Plaintiff's injuries and alleged damages were caused, in whole or in part, by Plaintiff, or parties or persons other than these Defendants.

12. Without admitting any allegations of liability, these Defendants seek an allocation of fault by the trier of fact against any person or entity who may be added as a party.

13. These Defendants claim as an offset any reimbursement, benefit, payment or renumeration which Plaintiff received or may receive from any collateral source, including but not limited to collateral sources pursuant to MCL 600.6303(4).

14. These Defendants object to the misjoinder and nonjoinder of claims and parties.

15. Plaintiff's claims are or may be barred by the applicable statutes of limitations, and no tolling provision, including but not limited to MCL 600.5856, saves Plaintiff's claims.

16. Plaintiff's allegations with respect to damages are speculative and will not support her cause of action.

17. Damages may be subject to reduction or allocation pursuant to MCL 600.2957 or MCR 2.112.

18. Plaintiff has failed to make every reasonable effort to mitigate her damages, if any.

19. To the extent that Plaintiff claims damages for conditions or diseases that pre-existed the statutory violations alleged in the Complaint, those conditions or diseases were not proximately caused by the alleged statutory violations.

20. Defendants incorporate by reference each and every other affirmative defense or special defense filed by any and all other defendants in this matter.

21. Defendants reserve the right to add or amend their responsive pleadings and Affirmative Defenses as discovery discloses additional information.

DATED: April 18, 2014						/s/  Stacy M. Kramer
								Carol D. Carlson (P41345)
								Stacy M. Kramer (P77091)
								SMITH HAUGHEY RICE & ROEGGE
								Attorneys for Defendants Bronson Health Care Group, Inc. and Bronson Methodist Hospital
								100 Monroe Center NW
								Grand Rapids, MI  49503-2802
								(616) 774-8000

### CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2014, I electronically filed the foregoing document(s) with the Clerk of the Court of the U.S. District Court, Western District of Michigan, using the ECF system, and mailed the foregoing document to Plaintiff's last known address via first-class U.S. mail.

DATED: April 18, 2014						/s/  Stacy M. Kramer
								Carol D. Carlson (P41345)
								Stacy M. Kramer (P77091)
								SMITH HAUGHEY RICE & ROEGGE
								Attorneys for Defendants Bronson Health Care Group, Inc. and Bronson Methodist Hospital
								100 Monroe Center NW
								Grand Rapids, MI  49503-2802
								(616) 774-8000

SHRR 2952465v1