UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KETURAH MIXON,

        Plaintiff,                                Hon. Paul L. Maloney

v.                                                Case No. 1:14-cv-00330

BRONSON HEALTH CARE GROUP,
INC., et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

       This matter is before the Court on Defendants' Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) and (h) (Dkt. 14), which was referred to the undersigned by the Honorable Paul L. Maloney for report and recommendation under 28 U.S.C. § 636(b)(1)(B). Plaintiff Keturah Mixon asserts a claim for relief under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd and 42 C.F.R. 489.24, and the Born-Alive Infant Protection Act ("BAIPA"), 1 U.S.C. § 801. The undersigned has carefully reviewed the submissions of both parties and has determined that a hearing would be neither necessary nor helpful. For the reasons stated below, the undersigned recommends that defendants' motion be granted.

       In an earlier case brought by plaintiff Keturah Mixon in this district, Case No. 1:13-cv-00843, involving a different pregnancy, the undersigned summarized the background of EMTALA as follows:

EMTALA has sometimes been referred to as the "anti-dumping statute." It is concerned with the practice of some Medicare approved hospitals refusing care for patients with an emergency medical condition or who are in active labor because the patients lack insurance or other means to pay their medical bills. *See, Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 268 (6th Cir. 1990), wherein the Sixth Circuit noted that the only clear guidance from the legislative history is that Congress intended to prevent hospitals from dumping patients who suffered from an emergency medical condition because the patients lacked insurance to pay their medical bills. EMTALA is not a statute providing a cause of action for medical malpractice claims, which are governed by state law instead. *See, Cleland, supra; see also Thornton v. Southwest Detroit Hospital*, 895 F.2d 1131, 1133 (6th Cir. 1990).

As alleged in plaintiff's complaint, on April 1, 2012, she was an admitted patient at Bronson Methodist Hospital and delivered a live son of 22 weeks gestation. (Complaint, ¶ 5). Following delivery, she alleges that she requested a "medical screening examination" and "stabilization treatment" for her son, including resuscitation efforts, in light of his "known emergency medical conditions." (Complaint, ¶ 5). She claims Bronson failed to provide her son with such an exam and treatments, and he died within minutes of his birth (Complaint, ¶ 5). Defendants' basis for dismissal is as follows. First, defendants argue that plaintiff lacks standing because she does not claim she herself was denied appropriate medical treatment and also that insofar as plaintiff seeks damages for the alleged failure to treat her son, such is not allowed by the statute or case law. Defendants also claim entitlement to dismissal of plaintiff's complaint as it lacks any allegation that Bronson treated her or her son in any disparate manner.

<u>STANDARD</u>

Defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and Fed. R. Civ. P. 12(h). The Federal Rules of Civil Procedure provide, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Failure to state a claim upon which relief can be granted may be raise by a motion under Rule

12(c)." Fed. R. Civ. P. 12(h)(2)(B). The standard for deciding a Rule 12(c) motion is the same standard applicable to motions under Rule 12(b)(6), in that the outcome turns exclusively on the pleadings. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

A Rule 12 motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).

Pursuant to Federal Rule of Civil Procedure 12, a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where

the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

<u>ANALYSIS</u>

<u>Standing and "Bystander" Damages</u>

In its "civil enforcement" section, EMTALA provides, in relevant part:

Any individual[1] ***who suffers personal harm as a direct result*** of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

---

[1]BAIPA expands the definition of "individual" to include "every infant member of the species homo sapiens who is born alive at any stage of development." 1 U.S.C. § 8(a).

42 U.S.C. § 1395dd(d)(2)(A) (emphasis added). While EMTALA does not define "individual" or the related terms, "personal harm" or "direct result," courts have looked to the Act's legislative history for clarification of who can sue under the civil enforcement provision. 42 U.S.C. § 1395dd(d)(2)(A); *see, e.g.*, *Zeigler v. Elmore Cty. Health Care Auth.*, 56 F. Supp. 2d 1324 (M.D. Ala. 1999).

Defendants are correct that plaintiff cannot assert a claim, as a nonattorney, on her son's behalf. But in her response to defendants' motion (Dkt. 17 at p. 3), plaintiff disavowed that she was bringing suit on behalf of her son and clearly stated she was seeking damages on behalf of herself only. The harm she alleges is emotional distress caused by the defendants' alleged failure to assist or resuscitate her infant son. Thus the court's analysis focuses on whether plaintiff may recover damages under EMTALA for damages sounding in emotional distress for the loss of her son.

The Sixth Circuit, in *Moses v. Providence Hospital & Medical Centers, Inc.*, did recognize third-party standing. 561 F.3d 573 (6th Cir. 2009). However, the undersigned agrees with defendants that *Moses* is readily distinguishable from the present action. In *Moses*, plaintiff's decedent had taken her husband to the defendant hospital because he was exhibiting slurred speech, disorientation, hallucinations, and delusions. *Id.* at 576. The decedent's husband was admitted for testing, but subsequently declined psychiatric treatment and was discharged home. *Id.* at 576–77. Ten days after discharge, he murdered the decedent. *Id.* at 577. Plaintiff, as representative of the deceased woman, filed an EMTALA action regarding the hospital's treatment of the decedent's husband. *Id.* Defendant moved for summary judgment, in part, on the grounds that plaintiff lacked standing to sue. *Id.*

While standing was not addressed by the district court, the Sixth Circuit discussed the issue on appeal. The court acknowledged that EMTALA makes no mention of non-patients, nor had any

federal appellate court addressed third-party standing. *Id.* at 580. The Sixth Circuit reasoned that "the estate of the individual who suffered an *actual personal injury* brings the suit in this case, claiming personal harm as a direct result of the hospital's decision." *Id.* (emphasis added). The court determined that, as enacted, the language of the statute "would seem to include" plaintiff's decedent, whose death allegedly resulted from the hospital's decision to release her husband before his psychiatric emergency medical condition had stabilized. *Id.*

As *Moses* involved "actual personal injury" (i.e., death) to plaintiff's decedent, courts in the Sixth Circuit have subsequently distinguished EMTALA claims, as is the case here, where no such injuries are alleged. For example, in *Lilly v. Harper Hospital Associates, Inc.*, No. 09-11900, 2009 WL 5217659 (E.D. Mich. Dec. 30, 2009), plaintiff brought an EMTALA claim against the defendant hospital, both individually and as the personal representative of the estate of his mother. *Id.* at *1. Plaintiff alleged that his mother was admitted to the hospital due to labored breathing, for which she received emergency room treatment for approximately eleven days. *Id. S*he was then transferred to the hospital's emergency extended care step-down unit. *Id.* During her stay in the unit, plaintiff's mother was found lying on the floor of her room, unconscious and unresponsive. *Id.* She was transferred back to the emergency room, where her attending physicians allegedly refused to order or perform necessary screening to determine the extent of treatment required, a decision that plaintiff attributed to his mother's age and history of medical problems. *Id.* Based on the physicians' representations, the family agreed to discontinue life support, and plaintiff's mother died shortly thereafter. *Id.*

The defendant-hospital moved to dismiss the action and for summary judgment on the basis, in part, that plaintiff lacked standing to bring an individual EMTALA claim. *Id.* at *4. The court

recommended dismissal of the action based on plaintiff's lack of standing or, alternatively, on plaintiff's failure to state a claim on which relief could be granted. *Id.* at *8 n.3. The court reasoned that plaintiff made no allegations regarding an injury to himself, and there was no evidence suggesting any *actual injury* to him. *Id.* at *4.

The damages claimed by Plaintiff mirror those of a bystander in a state law claim for negligent infliction of emotional distress, rather than an "actual injury" as suffered by plaintiff's decedent in *Moses*, *supra*. Here, Plaintiff alleges only that she had "to endure and watch [her] son grasp [*sic*] for air as he was dying in [her] arms," and is "tortured daily with this reality." (Complaint, ¶ 5). Her claimed damages include: loss of companionship, severe depression, mental anguish, and sadness. (Complaint, ¶¶ 5, 19). In short, Plaintiff alleges emotional distress because of the loss of her child—damages that sound in a bystander's claim for negligent infliction of emotional distress under state law. Absent an "actual injury," courts have recognized that EMTALA's reach should not extend to such bystander recovery. *See, Lilly; Ziegler, supra.*

<u>Disparate Treatment</u>

Plaintiff's complaint also should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(c), (h). In the Sixth Circuit, for a plaintiff to succeed on an EMTALA claim she must allege and prove disparate treatment; i.e., that defendant failed to provide her with "a screening that the hospital would have offered to any paying patient." *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 268 (6th Cir. 1990). As articulated by the *Cleland* Court, the terms of the statute, which refer to an "appropriate medical screening examination" by a hospital "within its capabilities," preclude resort to a malpractice or other objective standard of care in determining the meaning of the term "appropriate." *Id.* at 272. Instead, "appropriate" must be

interpreted to refer to the motives with which the hospital acts. *Id.* Where a hospital provides care to a plaintiff "that is no different than would have been offered to any patient, and, from all that appears, is within its capability (that is, constitutes a good faith application of the hospital's resources)," it is an "appropriate" examination and the plaintiff cannot maintain an EMTALA claim. *See id.* (internal quotation marks omitted).

Accordingly, the *Cleland* Court dismissed plaintiff's complaint when there was no indication or allegation that the care provided to the patient and the decision to discharge him were based on anything other than the best medical judgment of those employed by the hospital. *Cleland*, *supra* at 271. The court further reasoned:

> [T]here is not the slightest indication that this outcome would have been any different for a patient of any other characteristics. **Had his sex, race, national origin, financial condition, politics, social status, etc., been anything whatsoever, as far as can be gleaned from the complaint, the outcome would have been the same**. Under these circumstances, we hold that the complaint simply fails to allege any inappropriateness in the medical screening in the sense required by the Act.

*Id.* (emphasis added). The *Cleland* opinion, and the requirement that an EMTALA plaintiff demonstrate improper motive, has been followed widely. *See, e.g.*, *Romine v. St. Joseph Health Sys.*, 541 Fed. Appx. 614 (6th Cir. 2013); *Lacko ex rel. Griswatch v. Mercy Hosp.*, 829 F. Supp. 2d 543 (E.D. Mich. 2011); *Stringfellow v. Oakwood Hosp. & Med. Ctr.*, 409 F. Supp. 2d 866 (E.D. Mich. 2005); *Newsome v. Mann*, 105 F. Supp. 2d 610 (E.D. Ky. 2000); *Adams v. Grace Hosp.*, 962 F. Supp. 101 (E.D. Mich. 1997).  Plaintiff's claims are devoid of any allegation of disparate treatment. Nor can the court infer any. Based on Plaintiff's Complaint  (Dkt. 1),  Defendants' Answer and Affirmative Defenses (Dkt. 4), and the parties' Joint Status Report (Dkt. 8), the undersigned concludes that the only issue is whether defendants, or their agents,  were correct that plaintiff's son was not viable.  EMTALA does not create a general federal malpractice action.  Medical judgment

as to viability is a quintessential state malpractice issue, not an EMTALA claim.  In *Cleland*,  this

circuit specifically rejected that the word "appropriate"  means, at a minimum, the full range of state

malpractice law, and at a maximum a guarantee of a successful result. *Cleland*, 917 F.2d at 271.

Plaintiff has failed to allege any improper motivation or any fact from which improper motivation

could be inferred.

<u>CONCLUSION</u>

For the reasons articulated above, the undersigned recommends that Defendants' Motion for

Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) and (h) (Dkt. 14) be granted and this

matter dismissed.

Respectfully submitted,

Date:  March 9, 2015                                     /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court
within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(c).  Failure to file
objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).